UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

KELLY LELEUX,

    Plaintiff,

v.                                     Case No: 6:17-cv-747-Orl-37TBS

THE COVELLI FAMILY LIMITED
PARTNERSHIP, COVELLI FAMILY
LIMITED PARTNERSHIP II and COVELLI
FAMILY LIMITED PARTNERSHIP III,

    Defendants.

## REPORT AND RECOMMENDATION

Pending before the Court is a Joint Motion for Settlement Approval and Dismissal with Prejudice (Doc 30). Upon review, I respectfully recommend that the motion be **DENIED** and the settlement agreement be **REJECTED**, with an opportunity to amend.

### I. Background

Plaintiff worked as a Catering Coordinator for Defendants, doing business as Panera Bread, from late 2006 until early 2017. As a Catering Coordinator, she was eligible for overtime pay. On April 26, 2017, Plaintiff filed this action, alleging that Defendants violated the overtime provisions of the Fair Labor Standards Act, 29 U.S.C. §216(b) ("FLSA") in that they did not include delivery fees, tips, and bonuses in her "regular rate" of pay (Doc. 1, ¶¶ 35-36), and Plaintiff was not compensated for alleged time she spent engaged in after-hours communications with customers and managers (Id., ¶¶ 37-41).

Defendants filed an answer disputing Plaintiff's claims and allegations (Doc. 15). They maintain that their relevant pay policies and practices, including with respect to their

application to Plaintiff, comply with the FLSA (Id.).

The parties exchanged relevant documents and information pursuant to the Court's FLSA Scheduling Order (Doc. 16). Following review, they continued to investigate the claims and defenses and attended a settlement conference. Although an impasse was reached at that conference, the Parties arrived at a settlement at formal mediation (Doc. 28). This motion followed

## II. Discussion

*The Standard of Review*

"The principal congressional purpose in enacting the Fair Labor Standards Act of 1938 was to protect all covered workers from substandard wages and oppressive working hours, 'labor conditions [that are] detrimental to the maintenance of the minimum standard of living necessary for health, efficiency and general well-being of workers.'" Barrentine v. Ark.-Best Freight Sys., Inc., 450 U.S. 728, 739 (1981) (alteration in original) (quoting 29 U.S.C. § 202(a)). "Any employer who violates the provisions of section 206 or section 207 of [the FLSA] shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). Section 206 establishes the federally-mandated minimum hourly wage, and § 207 prescribes overtime compensation of "one and one-half times the regular rate" for each hour worked in excess of forty hours during a given workweek. The provisions of the FLSA are mandatory and "cannot be abridged by contract or otherwise waived." Barrentine, 450 U.S. at 740. To permit otherwise would "'nullify the purposes' of the [FLSA] and thwart the legislative policies it was designed to effectuate." Id. (quoting Brooklyn Sav. Bank v. O'Neil, 324 U.S. 697, 707 (1946)).

The parties seek judicial review and a determination that their settlement of Plaintiff's FLSA claims is a "fair and reasonable resolution of a bona fide dispute" over FLSA issues. See Lynn's Food Stores, Inc. v. United States, 679 F.2d 1350, 1354-55 (11th Cir. 1982). If a settlement is not one supervised by the Department of Labor, the only other route for compromise of FLSA claims is provided in the context of suits brought directly by employees against their employers under § 216(b) to recover back wages for FLSA violations. "When employees bring a private action for back wages under the FLSA, and present to the district court a proposed settlement, the district court may enter a stipulated judgment after scrutinizing the settlement for fairness." Id. at 1353 (citing Schulte, Inc. v. Gangi, 328 U.S. 108 (1946)).

The Eleventh Circuit has held that "[s]ettlements may be permissible in the context of a suit brought by employees under the FLSA for back wages because initiation of the action by the employees provides some assurance of an adversarial context." Id. at 1354. In adversarial cases:

> The employees are likely to be represented by an attorney who can protect their rights under the statute. Thus, when the parties submit a settlement to the court for approval, the settlement is more likely to reflect a reasonable compromise of disputed issues than a mere waiver of statutory rights brought about by an employer's overreaching. If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues, such as FLSA coverage or computation of back wages that are actually in dispute; we allow the district court to approve the settlement in order to promote the policy of encouraging settlement of litigation.

Id.

In determining whether a settlement is fair and reasonable, the Court considers the following factors: "(1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings

and the amount of discovery completed; (4) the probability of plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of counsel." Hamilton v. Frito-Lay, Inc., No. 6:05-cv-592-Orl-22JGG, 2007 WL 328792, at *2 (M.D. Fla. Jan. 8, 2007). There is a "'strong presumption' in favor of finding a settlement fair." Id. (citing Cotton v. Hinton, 559 F.2d 1331 (5th Cir. 1977)).

*Analysis*

The parties' Settlement Agreement (Doc. 30-1) provides that Plaintiff will receive a total amount of $59,000, broken down as $29,500 for unpaid wages and a like amount for liquidated damages. Plaintiff's counsel is to receive $16,000 for attorneys' fees and costs (including approximately $2,000 in costs). The Agreement also includes provisions regarding the waiver and release of wage and hour claims (Provision 2), a covenant not to sue (Provision 3) or disparage (Provision 5) and an agreement not to publicize information about the Agreement (Provision 7). While I find the monetary terms to be fair and reasonable, the inclusion of the additional provisions, as presently worded, prevents me from recommending approval of the Agreement.

Plaintiff initially estimated her actual damages to be approximately $84,602.17 ($169,204.34 including liquidated damages) (Doc. 23). She revised her estimate after reviewing Defendants' records in detail, and now concludes that her maximum recovery, if she prevailed at trial, would be approximately $55,000 ($110,000 including liquidated damages). The amount agreed-to here is substantially less than the revised estimate. Still, according to their motion, the parties agree that the settlement amount represents a reasonable compromise, given the existence and strength of certain proof issues. In view of the strong presumption in finding a settlement to be fair, and lacking any reason to

suspect overreaching or other improper purpose, I see no reason to disagree with counsel.

As for the attorney's fees, 29 U.S.C.§ 216(b) provides that in an FLSA action seeking unpaid wages and overtime the Court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." Id. Section 216(b) has been interpreted to mean that "fee awards [are] mandatory for prevailing plaintiffs." Kreager v. Solomon & Flanagan, P.A., 775 F.2d 1541, 1542 (11th Cir. 1985) (citation omitted); see also Shelton v. Ervin, 830 F.2d 182, 184 (11th Cir. 1987). Here, the parties represent that the amount of attorney's fees was determined separately and apart from Plaintiff's recovery. This is sufficient to establish the reasonableness of the fees and that Plaintiff's recovery was not adversely affected by the amount of fees paid to counsel. See Bonetti v. Embarq Management Co., 715 F. Supp. 2d 1222 (M.D. Fla. 2009); see also McQuillan v. H.W. Lochner, Inc., No. 6:12-cv-1586-Orl-36TBS, 2013 WL 6184063, at *3 (M.D. Fla. Nov. 25, 2013).

Turning to the more problematic provisions, in the Agreement Plaintiff releases:

> COVELLI and its predecessors, successors, all former, current, and future related organizations, companies, divisions, subsidiaries, affiliates, and parents, and collectively, their respective former, current and future directors, officers, employees, agents, representatives, attorneys, fiduciaries, assigns, heirs, executors, administrators, beneficiaries, and trustees (collectively the "RELEASED PARTIES"), from any and all wage and hour claims, charges, complaints, actions, causes of action, grievances, controversies, disputes, demands, agreements, contracts, covenants, promises, liabilities, judgments, obligations, debts, damages (including, but not limited to, actual, compensatory, punitive, and liquidated damages), attorneys' fees, costs, and/or any other liabilities asserted in or that could have been asserted against any of the RELEASED PARTIES in the Lawsuit based on the payment or alleged nonpayment of wages including any claims arising under federal or state wage and hour laws such

> as the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201 et. seq., the Florida Equal Pay Law, as amended, Fla. Stat. Ann.§ 725.07, the Wage Payment Laws, Fla. Stat. Ann. §§ 222.15, 532.01 et. seq., and the Florida Minimum Wage Act, Fla. Stat. Ann.§ 448.110.

(Doc. 30-1, ¶2). As Judge Dalton has noted:

> Though the parties represent that Plaintiffs will receive additional consideration for the inclusion of the General Release in the Settlement Agreements, the Court no longer approves such consideration because the value of a general release is incalculable. Additionally, as plaintiffs can only compromise FLSA claims on the basis of a "dispute over FLSA provisions," concessions unrelated to the substance of the FLSA claims have no place in FLSA settlements. See Moreno v. Regions Bank, 729 F. Supp.2d 1346, 1351-52 (M.D. Fla. 2010). Indeed, a plaintiff's FLSA claim–which is intended to remedy a defendants' violation of mandatory law– should not be used as leverage to procure a general release of all possible claims. Cf. Lynn's Food, 679 F.2d at 1352 (recognizing that "[t]he FLSA was enacted for the purpose of protecting workers from substandard wages and oppressive working hours"). For the same reasons, *a general release may not be used to release a non-party. Even if the parties were to cabin the release to FLSA claims, the Court remains skeptical as to the propriety of releasing FLSA claims against a non-party.*

Arguelles v. Noor Baig, Inc., 6:16-cv-2024-Orl-37TBS, slip op. at 2-3 (M.D. Fla. Feb. 24, 2017) (footnote omitted and emphasis added).

Plaintiff has agreed to release the named Defendants and a plethora of unnamed "former, current, and future" persons and entities, none of whom are parties to this action and none of whom are shown to have any connection at all to Plaintiff's claims. I recognize that Defendants want finality, and a provision that releases named Defendants and anyone else who has, as a matter of law, any liability for Plaintiff's wage and hour claims asserted in the case could be approved as appropriate. The exceptionally broad

- 6 -

language here, however, is not narrowly tailored to achieve this end and cannot be approved.

In paragraph 3 of the Settlement Agreement Plaintiff covenants not to sue any of the Released Parties for any claim covered by the waivers and releases, except Plaintiff may bring a claim to enforce the Agreement. I fail to see the point of this provision. Do Defendants believe the covenant not to sue will stop Plaintiff if she decides to breach the Agreement by suing Defendants on the released wage claims? For this reason, it adds nothing of value that I can discern.

Paragraph 5 requires both sides to refrain from disparagement of the other. Specifically:

> LELEUX agrees that she will not make any statements, either oral or written, that disparage any or all of the RELEASED PARTIES. In exchange for LELEUX's agreement to refrain from disparaging the RELEASED PARTIES, COVELLI agrees that in the event it receives a properly directed request concerning LELEUX's employment, COVELLI will verify only LELEUX's dates of employment and last position held, unless required by law to provide any additional information. LELEUX agrees to direct anyone seeking to verify her employment with COVELLI to contact the Director of Human Resources for response. In addition, COVELLI agrees that it will instruct Dani Degrood, Director of Catering for the Orlando Market, Kari Ramsdale, Director of Human Resources, and Kathy Salzman, General Manager, not to make any statements, either oral or written, that disparage LELEUX.

While I favor provisions that protect former employees from negative reports by the former employer, the language of this provision gives me pause. It is not clear what "disparagement" means and, to the extent it is interpreted as including any negative remark, Plaintiff would be agreeing to refrain from making any negative remark regarding *any* of the wide universe of "released parties" (most of whom are not identified in any meaningful way), with respect to *any matter whatsoever*. Just as confidentiality provisions

are disfavored in the FLSA context, I cannot find such a far-reaching non-disparagement clause to be fair and reasonable here.

Paragraph seven is an "Agreement Not To Publicize" which provides:

> The Parties acknowledge that the Court requires the Parties to seek approval of the Agreement. Furthermore, the Parties are mindful of the fact that the presiding judge's prior decisions urge against seeking settlement approval through confidential means, such as in camera review. **Recognizing these realities, the Parties do not include a confidentiality provision in the Agreement. That said, LELEUX and her counsel have assured COVELLI that, outside of the Parties' joint motion referenced in Paragraph 1 of the Agreement, they do not intend to publicize, announce, or otherwise post information about the Agreement to the public, whether in writing, orally, or electronically (including, for example, through social media or on a website).** Nothing in this Agreement prohibits or restricts LELEUX or her counsel from initiating communications directly with, or responding to any inquiry from, or providing testimony before, the Securities and Exchange Commission (SEC), the Financial Industry Regulatory Authority (FINRA), the National Labor Relations Board (NLRB), the Equal Employment Oppo1tunity Commission (EEOC), or any self-regulatory organization or governmental authority charged with the enforcement of any laws.

This provision explicitly disclaims confidentiality while simultaneously memorializing it. To the extent this is meant to be enforceable as a confidentiality provision, it is not appropriate. See Housen v. Econosweep & Maintenance Serv., Inc, No. 3:12-cv-461-J-34TEM, 2013 WL 2455958, *2 (M.D. Fla. June 6, 2013). This paragraph can only be included if it is expressly understood that it is unenforceable.

While the Agreement contains a severability clause (Paragraph 12), it is limited to provisions other than those set forth in Paragraphs 2 and 3 (the waiver, release and covenant not to sue). As I have expressed reservations about those provisions, I cannot recommend severance in order to approve the monetary terms. Therefore, viewed as a

whole, I do not find the settlement agreement to be a "fair and reasonable resolution of a bona fide FLSA dispute."

### III. Recommendation

Upon consideration of the foregoing, I respectfully recommend that the motion be **DENIED** and the settlement agreement be **REJECTED**, with an opportunity to amend to correct the deficiencies identified in this Report.

### IV. Notice to Parties

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. See 11th Cir. R. 3-1.

**RESPECTFULLY RECOMMENDED** at Orlando, Florida on October 18, 2017.

THOMAS B. SMITH
United States Magistrate Judge

Copies furnished to:

    Presiding United States District Judge
    Counsel of Record
    Any Unrepresented Parties